**ANADARKO PETROLEUM CORPORATION,**
Appellant,

v.

**The CORPORATION COMMISSION OF the STATE OF OKLAHOMA, composed of The Honorable Bob Anthony, Chairman, The Honorable J.C. Watts, Jr., Vice Chairman, and The Honorable Cody L. Graves, Commissioner; Lloyd Tucker; Thad Tucker; John McCaull; Ruth McCaull; and Harold Fowler, Appellees.**

No. 80515.

Court of Appeals of Oklahoma,
Division No. 3.

Aug. 10, 1993.

John R. Reeves, Jack C. Moore, Mock, Schwabe, Waldo, Elder, Reeves & Bryant, Oklahoma City, for appellant.

Lendil C. Fowler, Jr., Leslie Wilson Pepper, Kent Douglas Talbot, Corp. Com'n, Oklahoma City, for appellee.

## MEMORANDUM OPINION

GARRETT, Judge:

This appeal arises from Order No. 368594 of Appellee, the Oklahoma Corporation Commission (Commission), denying the application of Appellant, Anadarko Petroleum Corporation (Anadarko).[1] Anadarko filed its application with the Commission requesting authority to use the Woodard "B" No. 2 Well in Texas County, Oklahoma, as a non-commercial salt water disposal well so that water produced from offset wells operated by Anadarko could be disposed of into the Morrow "G" formation. The individual Appellees (Appellees), property owners in the area of the proposed disposal well, protested.

Anadarko's two general purposes for using the salt water disposal well are: (1) it is more economical to dispose of the salt water produced from other wells operated by Anadarko by reinjecting it into the formation instead of hauling the water off the site by truck; and (2) disposal of water into the Morrow "G" formation, in the disposal well, will have a positive effect upon the production lives of wells currently producing from the Morrow "G" formation offset-

ting the disposal well by maintaining the pressure in or repressuring the reservoir in the formation to extend the production lives of the offsetting producing wells.

The Commission made, *inter alia*, the following findings:

5. Under 52 O.S. Section 139 (1981) and 63 O.S. Section 1–2005 (1991), the Commission has a duty to protect subsurface fresh water, especially sole source aquifers.

6. The Commission finds that the proposed well may satisfy safety requirements suitable for disposal wells in some areas, but that those standards are insufficient in a sole source aquifer [the Ogallala Formation], such as the one described above. The decision of the Commission is based on substantial evidence and will assist in the protection of subsurface fresh water as required by statute. The Application is therefore denied, and IT IS SO ORDERED:....

Anadarko contends it has the right to use the Woodard "B" No. 2 well as a disposal well under the doctrine of "reasonable use". It describes this doctrine as one in which "a person may use his property in any lawful manner, except that he may not use it so as to injure or damage his neighbor". See *West Edmond Salt Water Disposal Ass'n v. Rosecrans*, 204 Okla. 9, 226 P.2d 965, 973 (1950).

Anadarko also contends the uncontroverted evidence shows it met or exceeded every requirement of the Commission's regulations and the use of the Woodard "B" No. 2 Well will not cause pollution of any waters. It contends the remarkable fact about this appeal is that the Commission did not find the disposal well failed to meet any of the requirements of the Commission's rules, but in fact, recognized that "the proposed well may satisfy safety requirements suitable for disposal wells in some areas."

In its order, the Commission summarized the evidence of Anadarko as follows:

---

**1.** Prior to the Commission's order, hearings were held on Anadarko's application by an Administrative Law Judge (ALJ) and an Appellate Administrative Law Judge (AALJ) of the Commission. Both the ALJ and the AALJ recommended approval of the application.

3. The Applicant's evidence is summarized as follows: The base of treatable water is found at approximately 450 feet in depth. The proposed well is a depleted oil well completed in 1976, within the Morrow "G" Formation, with a total depth of 6,025 feet. The casing program of the well appears on Exhibit No. 20. Injection is proposed to be through casing, tubing and packer into the Morrow "G" Formation between 5,960 feet and 5,982 feet. The formation is approximately 25 feet thick, with 14% porosity and 10 md of permeability. The well would be used for injection of up to 1,000 b/d of locally producted (sic) salt water, at up to 750 psi surface injection pressure. The formation appears to be suitable for injection because of recent acid stimulation work, indicating good injectivity. Also, the casing has been tested to the proposed maximum injection pressure for 30 minutes. In addition, most of the abandoned wells in the area have been plugged according to Commission rules applicable at the time of abandonment, *although a number of unused wells completed in the injection interval remain unplugged.* (Emphasis added).

The Commission summarized the evidence of the respondents [Appellees] as follows:

4. The respondents (sic) evidence is summarized as follows: *The wells in the area have a history of poor cementing over ground water bearing strata.* The fresh water aquifer in the area is the Ogallah (sic) Formation, which is the sole source aquifer for area. There is simply no other water for residential and agricultural consumption. The aquifer is prolific and highly transmissive. In the event of a surface or subsurface release to the aquifer, permanent damage would spread rapidly, and in affected areas, would end farming and ranching activities, which are the major local industries. (Emphasis added).

The Commission responds that there was substantial evidence, through the testimony of Thad Tucker, a farmer and rancher in the area, to meet the standard of review and to support the order. It contends his uncontradicted testimony, that the Ogallala fresh water aquifer underlying sections 8 and 9 was the only fresh water in the area to support farming and ranching, supports Commission Order No. 368549. The Commission also argues that although Anadarko met the Commission's regulations, the uncontroverted evidence also shows the use of the Woodard "B" No. 2 well could injure or damage a neighbor, which under Oklahoma law, would prohibit such disposal well.

On appeal from an order of the Corporation Commission, this Court must determine whether the order is supported by substantial evidence. See Art. IX, § 20, Oklahoma Constitution. In determining whether the order is based on "substantial evidence", we look not only at evidence tending to support the order, but we also must consider evidence in the record which fairly detracts from its weight. *Forest Oil Corp. v. Corporation Commission of Oklahoma,* 807 P.2d 774 (Okl.1990); *El Paso Natural Gas Company v. Corporation Commission of the State of Oklahoma,* 640 P.2d 1336 (Okl.1982). If supported by substantial evidence, the Commission's order will be affirmed.

Greg Albert Johnson (Johnson), Anadarko's production engineer, testified and explained how the disposal well would work. Following his explanation, the court asked Johnson if the fiberglass tubing was to be run on top of the surface or buried, and he answered it would be buried. He stated Anadarko would be metering the disposal water, and it would know immediately if a leak occurred. When asked by the court how long it would take to know, he stated it would be within that day or week.

Anadarko contends all of the evidence shows the abandoned wells in the area had been properly plugged and abandoned according to Commission Regulations. At the hearing before the Commission En Banc, Anadarko made repeated objections to argument by Appellee John McCaull on the ground that he referred to evidence which was not in the record. The Commis-

**538**

sion gave Anadarko a continuing objection and allowed McCaull to continue, although he was not sworn to testify. His argument includes the following:

> [A]nd Section 8 and Section 9, if you check the records, their tests are the same. There was no circulation returned at that depth. I did research on that as I used to be with the Texas Oil and Gas Company for the years in '61 to '77. And the other—I would appreciate that as to the record on this other, of course, he would like to object. Some of these so-called plugged wells in Section 9 they didn't want to bring up. Some of them in Section 9 was only plugged with 5 sacks of cement back in '57 and '58. That's not today's standards of plugging. Today's standards use more cement. We don't want no environment hazard. We have to have a guarantee not to lose our precious most valuable resources we got, the Ogallah water supply. And that is very important for this area. And these other wells in Section 8 and 9 he didn't bring up and there is a fault. It is not no seal fault as he kept saying because— and the drilling reports you can check in Section 8 and 9. He only talked about Section 5. We're not worried about Section 5, we're worried about 8 and 9....

McCaull did not appear at the initial hearing before the ALJ. Although he wrote a letter to Anadarko's counsel and to the Commission that he would be unable to attend, he did not request a continuance and did not have a lawyer appear on his behalf. The ALJ went ahead with the hearing as scheduled because McCaull did not request a continuance. At the hearing before the Appellate ALJ (AALJ), McCaull appeared and attempted to inject argument of the type noted above. The AALJ advised him his argument would have to be confined to the evidence, as shown in the report of the ALJ. Also, at the Commission En Banc hearing, the Commissioners advised him he could not raise matters, at that level of the proceedings, which were not already in evidence. However, con-

tained in the Commission's summary of the respondents' [Appellees'] evidence is the finding that the "wells in the area have a history of poor cementing over ground water bearing strata." This finding is not supported by substantial evidence unless McCaull's argument is to be considered testimony.

■ The recommendations of a hearing officer are not binding on the Commission. In *Van Horn Oil Co. v. Oklahoma Corp. Com'n,* 753 P.2d 1359 (Okl.1988), the Court held: the Commission has authority to delegate the power to hear evidence on Commission matters; but, hearing officers to whom the hearing is assigned only have authority to receive evidence and make recommendations to the Commission. The Court stated, at page 1363:

> Only the Commission itself is empowered with the authority to render an Order concluding a dispute within the Commission's jurisdiction. The Commission's hearing of a matter which has been previously presented to a hearing officer does not constitute an appeal from the hearing officer's report. The procedure of hearing evidence, issuing reports and filing exceptions to those reports is designed to clearly define the dispute presented to the Commission. The Commission exercises its judgment in determining that dispute. No intermediate proceeding within the Commission may hamper the exercise of the Commission's judgment in resolving a dispute properly before it.

■ Anadarko contends it was denied the right to cross-examine to the extent this argument was considered testimony rather than appellate argument. The ALJ received no evidence as to improperly plugged wells in the 1950's. Obviously, the Commission treated the argument as testimony, as it is contained in the summary of evidence, and it apparently weighed heavily in the Commission's decision. We do not hold the Commission *cannot* receive further evidence.[2] We do hold that Anadarko

**2.** Corporation Commission Rules, OAC 165:5–13–3(e), regarding hearings, provide the follow-

ing as to rules of evidence:

was effectively denied its right to cross examine and to offer evidence in response. It was error to allow such matters to be interjected at that point in the proceedings, without prior notice and the opportunity to respond. This, in effect, constitutes a denial of due process of law. We therefore hold the order must be vacated. The matter is remanded to the Corporation Commission for further proceedings.

We acknowledge that protection of fresh water aquifers is an important function of the Corporation Commission, and our holding must not be interpreted to mean otherwise. Upon remand, the ALJ or the Commission may receive and consider such evidence, as deemed appropriate, but both sides must have an equal opportunity to present evidence, and to respond to the evidence presented. It becomes unnecessary to address Anadarko's remaining propositions of error.

VACATED AND REMANDED.

HUNTER, P.J., and BAILEY, J., concur.

The Commission and Administrative Law Judges shall follow the rules of evidence applied in the district courts of Oklahoma, except that such rules may be relaxed where the Commission or the Administrative Law Judge deems it in the public interest to do so. The Commission or Administrative Law Judge may exclude evidence upon objection made thereto, or the evidence may be received subject to final ruling by the Commission. An exception will be deemed to be preserved by a party of record objecting to evidence upon an adverse ruling thereon. The Commission or Administrative Law Judge may exclude inadmissible evidence on his own motion and may direct cumulative evidence be discontinued. *Cf.*, OAC 165:5–13–3(m), **Closing the record:**

The record shall be closed when all parties of record have had an opportunity to be heard and to present evidence, and the Commission or Administrative Law Judge announces that the record of testimony and exhibits is closed. Unless a decision is then announced, the matter will be taken under advisement for later decision.